Your Honor, I believe that the first point of inquiry should be the claim of due process violation resulting from the alleged abuser's testimony under VAVA claim, and if that is properly before this Court. I believe that the Board of Immigration Appeals actually reviewed this matter, and if that is so, then this Court has every right to review that matter, and we do not need to review the issues of exhaustion or the reviewability of the Board's sua sponte rights. Counsel, could you please point us to the record where the Board considered this issue? Yes, Your Honor. On their March 31, 2005 decision, I believe it's the very last sentence. They clearly state, we have already considered those facts and arguments in rendering our October 21, 2003 decision, and I believe they are referring to the facts and arguments that we have raised on our motion to reopen. They are pointing to them and saying these were raised before and we have reviewed them before. Since they were not raised on appeal, the Board may have done that by themselves by reviewing the record. Otherwise, this sentence would be disjointed and illogical. Let me ask you this question, Counsel. What case authority do you have for the proposition that an issue that's raised for the first time in a motion to reopen is properly exhausted? This Court has not reached that decision yet. In the Barahas case that was just recently done, on narrow constitutional issues, the Court excused exhaustion. And in Sun v. Ashcroft, the same thing has happened. This Court has not had a case similar to that. A sister circuit, the Second Circuit, has done that in the case of U.S. v. Copeland. They have stated, nevertheless, under our case law, Copeland's motion to reopen the deportation hearing and his appeal from the denial of that motion satisfies the exhaustion requirement. They cite U.S. v. Perez, which is 330F3rd 97-101. That's the Second Circuit case, 2003. And, Judge Gould, you have opined yourself in a similar case that the BIA had ample opportunity to address the issue but declined and failed to do so. It was raised, albeit with less than perfect timeliness. This Court, the public, and the agency will suffer if that decision is left untouched since it is erroneous as a matter of law. It is erroneous as a matter of law to allow an accuser to testify in a VAWA application. It is ex- Can you tell me, please, what case was that you were reading from? Unfortunately, I don't have the site, Your Honor. I can't remember everything I've ever said in writing. I assure you it was something that you said, but unfortunately, I haven't written the case name. I believe that. Your Honor, in this case, the law has clearly been violated, and it's egregious because the very people that have been charged with protecting it are the people that have violated it. The Personal Responsibility and Work Opportunity Reconciliation Act of 1996, Section 384, and IRA-IRA at a similar section, have specifically prohibited any Department of Justice employee, including INS officers and the immigration judge, from making any adverse determination based on the accuser's testimony. In this case, if you look at the judge's testimony, there is hardly any mention of what the Respondent has said. The judge weighs or counterweighs everything that the Respondent has said against the testimony of the accused in the court. On May 7, 1997, INS issued a memoranda to its employees about the confidentiality. Your question? Yes, Your Honor. You said, referred to precedent, that they can't rely on testimony of an accuser. Is that right? Not the precedent. That's the Personal Responsibility and Work Opportunity Reconciliation Act of 1996, and IRA-IRA at Section 384. Okay. In other circuits, Your Honors, for instance, the Fifth Circuit, they have discussed exhaustion, and they have said exhaustion can be applied prudentially rather than jurisdictionally, and exhaustion is not a per se prerequisite. I believe that if the imposition of this exhaustion requirement fails to serve underlying policy consideration and it leads to an unjust result, especially in a case like this when the board has had an opportunity to respond to it and they do not, it is not egregious for this Court to consider the case. Since I have only a few minutes left, I go to the cruelty issues on this case, if I may. The judge makes much of the fact that the age difference was ‑‑ I'm sorry. The judge states that the respondent makes much of the fact that the age difference was 22 years instead of 12 years. Is that in and of itself cruelty? No, it need not be. In similar cases, for instance, in Hernandez, the Court refers to Dr. Marianne Dutton in quoting and saying the effect of psychological abuse, coercive behavior, and the ensuing dynamics of power and control can be viewed as a single continuing entity. Here we have an accuser, I'm sorry, an accused, an abuser, who resorted to name-calling, ultimatums about the respondent's help to the family, about the ‑‑ she had infidelity in the relationship. She lied about her age in a situation where that age difference is not merely incremental or mathematical. It could possibly affect the fact that the respondent wanted to have a child with this woman. The accused, she accused the individual of being a homosexual when he was a heterosexual, clearly set to aggravate him, did false testimony in court. This was a case that cumulatively, if you look at all the actions and the utterances of the abuser, it rises to the level of extreme cruelty. I do not believe that the Court needs to review the sua sponte issue, because I believe that in this case, exhaustion has been done based on the Court's own utterances. But if the Court needs to reach exhaustion, based on the matter of XGW, we do have a change of significant and meaningful nature here, which is not merely fundamental or incremental. And this goes to the issue of whether asylum can be granted based on the Mashiri case now, or withholding of removal can be granted based on that. I don't believe anything that comes out of this Court is incremental or merely incremental. They are corrections of erroneous interpretations of law or elucidations of legal ambiguities. If we rely on the fact that only statutes are raised, rise to the level of fundamental and not merely incremental, we will have no sua sponte exercise of discretion by the Board. I would like to reserve the rest of my time. Good morning. May it please the Court, my name is Cindy Ferrier and I'll be representing the Attorney General in this matter. First off, it's important to note the context of this particular case. Congress passed the Violence Against Women Act in order to protect persons who had a genuine history or fear of violence or abuse, and where the abusive spouse further threatened them by controlling their immigration status. The record here doesn't show that. However, the Court doesn't even get to that particular question, because in this case, the Court's jurisdiction is limited by the fact that the attorney or that the immigration judge, excuse me, denied cancellation of removal on an extreme hardship basis. He further found that there was no extreme cruelty, but the hardship determination by the immigration judge is dispositive of the issue and of the Court's evaluation of the case. There is, the Court may certainly exercise jurisdiction if there has been a due process or legal question raised by Petitioner that is colorable. Here, Petitioner hasn't raised such a claim. He puts forth that, in fact, the due process claim was exhausted. However, it wasn't exhausted in the appeal to the Board. And there is an Eleventh Circuit case, which has recently come out, where the Court has held that when the Board considered an issue, sua sponte, essentially on its own, but later, but where Petitioner didn't raise them, that that doesn't constitute exhaustion of the issue. The Court in the cases Amaya, Artu Duga, I can't pronounce that properly, but the site is 463 F. 3rd, 1247, and it's at 1250 and 1251 that the Court discusses this. And essentially, the Eleventh Circuit says that if the Board addresses an issue sua sponte and a Petitioner is entitled to them-based arguments therein, his petition for review, we cannot say that the Board fully considered the Petitioner's claims, as it had no occasion to address the relevant arguments with respect to the issue it reviewed. Nor can we say that there's any record, let alone an adequate record, of how the administrative agency handled the claim in light of the arguments presented. Counsel, assuming we decide that the due process issue was sufficiently exhausted, what's your response to opposing counsel's argument that the statute prohibits testimony from the abusive spouse? I believe what Petitioner's counsel stated, and I could be wrong, but I believe that what he's saying, that the statute prohibits, is that the testimony can't be used against the accuser in the final decision by the immigration judge or by the service. Do you agree with that statement of the law? To be very honest, I actually don't know specifically what the law says on that topic. The regulation provides that the hearing shall be closed unless the Petitioner allows for the hearing to be open. But that doesn't address the point that was made by opposing counsel regarding use of the abusive spouse's testimony. Well, in this case, even if you were to credit how the law is characterized by Petitioner's counsel, the immigration judge did not reference or did not rely on, I should say, the ex-wife's testimony in coming to the conclusion with regard to extreme hardship. And as that particular finding, again, is dispositive, then the Court need not, again, get into the evaluation of the battered spouse claim because, again, the immigration judge denied it in an exercise of discretion and the Court's jurisdiction is therefore limited in that aspect. And I should note that the immigration, the other due process violation that they cited was that the immigration judge applied the improper standard and didn't evaluate all the proper factors in coming to his hardship determination. But, in fact, again, Petitioners haven't shown any prejudice by this violation if it were to have occurred because they haven't shown that there were any of these other additional factors which would have, in fact, related to Petitioner at all. In fact, the immigration judge considered many, many factors in making his claim or in making his determination that there was no extreme hardship that had been demonstrated by Petitioner. In addition, it should be noted that Petitioner hasn't mentioned here but the asylum and withholding of removal claims here. The Court is also without jurisdiction to review the determination that the immigration judge made that the asylum application was untimely filed, and Petitioner doesn't appear to be seriously challenging that. So the only claim with regard to persecution that's before the Court is the withholding of removal claim. And here, the withholding of removal claim was fully evaluated by the immigration judge. Again, the testimony that was relied upon was, again, the Petitioner's own. And the evidence here doesn't compel the conclusion, which is the standard that the Court must apply, doesn't compel the conclusion that Petitioner showed a clear probability that he would actually be persecuted if he were to return to Germany. Even considering the Petitioner's claims in his motion to reopen regarding the Mashiri case, which has been recently decided or more recently decided by this Court, there the actual mistreatment suffered by the Mashiris was to a much greater degree than Petitioner's own mistreatment. There they actually had received a death threat. Soon after the death threat, they had their tires slashed, their home was robbed and ransacked, and the Court determined that that was in direct relation to the death threat. The husband had been beaten twice. The wife had had to run to escape mobs. Their sons had been beaten severely and left with physical scars. The violence also compromised their ability to earn money, and the Court also determined that there was emotional trauma, and all of those factors cumulatively rose to the level of persecution in that case. And again, that was for asylum, which is a more lenient standard than for withholding, which is what Petitioner needs to show here. So although Petitioner may have certainly experienced discrimination and perhaps harassment, it was not of the sort to rise to the level of persecution. And with regard to the Court's jurisdiction to review the Board's determination that it did not want to sua sponte reopen the case based upon this Mashiri decision or new allegations raised by Petitioner, the Court has held quite firmly in Icominian that it doesn't have jurisdiction to review the Board's determination not to sua sponte reopen. And the facts that Petitioner cites that there is a case that provides a standard that the Court can apply to review the determination isn't persuasive here, only because that particular case that he's relying on, I think it's XGW, was actually out prior to Icominian and was cited by the Court in Icominian. So the Court was aware of it at the time and still didn't find that a persuasive guideline by which to be able to review the Board's determination to deny sua sponte reopening. So in this particular case, Petitioner's claims fail, and to a certain degree most of his claim must be dismissed for lack of jurisdiction. And to the extent that the Court finds that there are due process violations which were exhausted and which were raising a claim, they are not colorable such that the Court should exercise jurisdiction over those claims. And, in fact, the asylum claim, or I should say the withholding claim, is also something that the Court should deny. Thank you, counsel. Judge Rawlinson, you had asked about whether there's a section of IRIRA that actually prohibits the allowing of the accused or the abuser to be in the court. Section 384 of IRIRA makes it illegal to release any information concerning an application for a battered spouse or battered child provision. The section prohibits the USCIS and IJs from making any adverse determination of admissibility or deportability using the information provided by the abuser. If the USCIS agents receive such information, he or she is implored to independently corroborate that from an unrelated person, and not to do so would result in a $5,000 penalty. In this case, the trial attorney actually sought out on many occasions the abuser based on her own testimony or her own utterances in court. The trial attorney violated this provision of the law. The congressional intent in this case is very clear. You're not supposed to get the information from the abuser. As far as the immigration judge and whether he made a reasoned decision or not, the immigration judge in this case, Your Honor, consistently explains the Respondent used Ms. Kyer for his own purposes, and Ms. Kyer used him for her own. She had genuine feelings of affection for him, but felt abused. We are not supposed to be looking at the abuser's genuine feelings. Every abuser in the world has some excuse why they're abusing people. We are not looking at that. We are looking to see whether on an objective basis this rose to the level of extreme cruelty or not. And on the case of Ekiminian, that I believe that the immigration judge, by allowing the abuser to be in the court, had his judgment tinged to the degree that nothing in that hearing was fundamentally fair. You cannot compare the immigration judge's judgment to the judge's judgment unbiased opinion when you have listened to the abuser and relied on that, and also violated the law yourself in reaching that decision. Thank you very much, Your Honors. The argued case shall be submitted. And now we'll turn to U.S.B. Patino.
judges: Gould, Rawlinson, Covello